## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

William Vidal Alvacora,

                           Petitioner,

vs.

                   Case No. 0:26-cv-00675-DMT-SGE

Samuel Olson, Warden, Director of St. Paul Field Office, U.S. Immigration and Customs Enforcement et al.,

                     Respondents.

---

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

### INTRODUCTION

[¶ 1]    THIS MATTER comes before the Court on a Petition for Writ of Habeas Corpus filed on January 26, 2026. Doc. No. 1. The Respondents filed a Response on January 29, 2026. Doc. No. 8. The Petitioner filed a Reply on January 30, 2026. Doc. No. 9. For the reasons set forth below, the Petition is **DENIED** and **DISMISSED without prejudice**.

### BACKGROUND

[¶ 2]    The facts in this case are not in dispute. Petitioner is a citizen Ecuador but has resided in the United States since 2013. He resides in Minnesota. When he was returning home from work on January 26, 2026, U.S. Immigration and Customs Enforcement took Petitioner into custody pursuant to 8 U.S.C. § 1225(b)(2)(A). According to Petitioner, two days after filing the Petition, the Respondents transferred Petitioner to ERO Camp East Montana Detention Center in El Paso, Texas, on January 28, 2026.

**DISCUSSION**

## I.    Legal Standard: Habeas Corpus

[¶ 3]    The Constitution provides the right to a Writ of Habeas Corpus, which requires authorities to present a detained person before the court to determine if the detainment is lawful. See U.S. Const. Art. I, § IX. "Habeas is at its core a remedy for unlawful executive detention." Munaf v. Green, 553 U.S. 674, 693 (2008). As a general matter, 28 U.S.C. § 2241 grants district courts broad jurisdiction to issue a writ of habeas corpus "as law and justice require." Jones v. Hendrix, 599 U.S. 465, 473 (2023). A prisoner can bring a petition for a writ of habeas corpus when "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has held that § 2241(c)(3) confers jurisdiction on district courts to hear habeas corpus challenges to the legality of the detention of aliens. Rasul v. Bush, 542 U.S. 466 (2004). To benefit from the writ's protection, a habeas petitioner bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. Maldonado v. Olson, 795 F. Supp. 3d 1134, 1143 (D. Minn. 2025) (collecting cases). Even though Petitioner has been transferred to Texas, this Court retains jurisdiction because Petitioner was in custody in the District of Minnesota when he filed his Petition. McCoy v. U.S. Bd. of Parole, 537 F.2d 962, 966 (8th Cir. 1976) ("The subsequent transfer of petitioner to Oklahoma did not cause of loss of habeas corpus jurisdiction in the District of Nebraska."). See also Propotnik v. Putman, 538 F.2d 806, 807 (8th Cir. 1976) (noting "the rule that a court does not lose jurisdiction when a habeas corpus petitioner is transferred out of the court's jurisdiction after the petition is filed").

## II.    Change in Executive Agency Policy for Alien Detentions

[¶ 4]    Petitioner claims that Section 1225(b)(2) does not apply to him. That provision states, "in the case of an alien who is an applicant for admission, if the examining officer determines that an

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). "Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded." Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). Under Section 1225(b)(2)(A), the detained alien is not entitled to a bond hearing. See id. (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

[¶ 5]   Instead, the Petitioner argues Section 1226(a) applies. It provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a)(2)(A) further states that the Attorney General "may" release the alien on bond. Jennings, 583 U.S. at 303. Section 1226(c)(1) contains several exceptions, restricting the Attorney General from releasing aliens who committed or are charged with certain offenses.

[¶ 6]   This Court begins its analysis by noting that this debate surrounding the applicability of Sections 1225(b)(2) and 1226(a) has arisen in many courts over the past several months. Previously, the Department of Justice ("DOJ") advised Department of Homeland Security ("DHS"), and thus ICE that § 1226(a) applied to aliens, like Petitioner, who were inadmissible, but were not subject to expedited removal at the time ICE detained them. See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

[¶ 7]   However, on September 5, 2025, the Board of Immigration Appeals ("BIA") held that § 1225(b)(2)(A) appropriately applied to this category of aliens, meaning those aliens are subject

to mandatory detention and the immigration judge lacked jurisdiction to hold bond hearings or order release. <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216, 220 (BIA 2025).

[¶ 8]    Many courts have held this change in policy is incorrect and granted the habeas petitions. <u>See</u> <u>Coronado v. Sec'y, Dep't of Homeland Sec.</u>, 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025) (noting more than 700 decisions addressing this issue with some courts characterizing the "overwhelming majority" of decisions holding that Section 1226(a) applies). However, a small but growing number of courts have reached the opposite conclusion, including one in this District. <u>See, e.g.,</u> <u>Jose C. v. Bondi</u>, Civ. No. 26-135 (PAM/DTS), Order, ECF No. 14 (D. Minn. Jan. 20, 2026); <u>Coronado</u>, 2025 WL 3628229, at *1; <u>Mejia Olalde v. Noem</u>, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025); <u>Vargas Lopez v. Trump</u>, 802 F.Supp.3d 1132 (D. Neb. 2025).

### III.    Section 1225(b)(2)(A) Applies to Petitioner

[¶ 9]    After reviewing the statutory language and relevant caselaw, the Court finds Section 1225(b)(2)(A) applies to Petitioner. Accordingly, Petitioner is not entitled to a bond hearing or release.

[¶ 10]   In matters of statutory interpretation, the Court always begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." <u>Union Pac. R.R. Co. v. Surface Transp. Bd.</u>, 113 F.4th 823, 833 (8th Cir. 2024) (cleaned up). The first question is whether Petitioner fits into the presumption of being an "applicant for admission" under § 1225(a)(1), which provides, "An alien **present in the United States** who has **not been admitted** or who arrives in the United States . . . **shall be deemed for purposes of this chapter an applicant for admission**." (emphasis added). In this context, "admission" specifically means <u>lawful</u> entry, not just presence in the United States. 8 U.S.C. § 1101(a)(13)(A). Accordingly, "[a]n alien c[ould]

have physically entered the country many years before and still be an applicant for <u>lawful</u> entry, seeking legal 'admission.'" <u>Mejia Olalde</u>, 2025 WL 3131942, at *3.

[¶ 11]  In this case, Petitioner fits all these criteria. Petitioner is an "alien." He is "present in the United States." And he "has not been admitted" because "he did not lawful[ly] enter the country after inspection and authorization by an immigrant officer." §1225(a)(1); § 1101(a)(13)(A); <u>see also</u> <u>Jennings</u>, 583 U.S. at 287 ("Under [ ] 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"). Therefore, Petitioner is an "applicant for admission" for purposes of § 1225(b)(2)(A), meaning he is subject to detention and not eligible for a bond hearing.

[¶ 12]  Petitioner contends that Section 1225(b)(2)(A) only applies to individuals "seeking admission." Some district courts have held that, when the alien has been in the country for several years, the alien must be taking some affirmative step beyond continuous presence in the country to be classified as "seeking admission" and thus subject to Section 1225(b)(2)(A). <u>See, e.g.</u>, <u>Ochoa Ochoa v. Noem</u>, 25 CV 10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); <u>Eliseo A.A. v. Olson</u>, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); <u>Mayamu K. v. Bondi</u>, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025).

[¶ 13]   This Court is not convinced there is a meaningful distinction between being an "applicant for admission" and "seeking admission" under Section 1225(b). <u>See</u> <u>Jennings</u>, 538 U.S. at 297 ("As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute.")). It does not make sense to describe an active applicant for admission as somebody who is not "seeking" admission. Properly read, "alien seeking admission" is simply another way of referring to an "alien who is an applicant for admission." <u>Coronado</u>, 2025 WL 3628229, at *8. In common usage, someone who is an "applicant

for admission" is also necessarily "seeking admission" and Section 1225(a)(1) classifies Petitioner as an applicant for admission based on his presence in the country alone. Id. Moreover, if the group of aliens "seeking admission" were a subset of "applicants for admission," one would assume that Congress would have provided some directives as to the contours of that subset, e.g., factors to consider in deciding what qualifies as "seeking admission." Id. at 9. However, Congress did not do so. Id. Accordingly, Section 1225(b)(2)(A) applies to Petitioner, whether he is taking any affirmative steps to be lawfully admitted or not.

[¶ 14]  Even if the Court assumed for sake of argument that there is a meaningful distinction between an "applicant for admission" and "seeking admission," Section 1225(b)(2)(A)'s use of present-tense language ("seeking" and "determines") shows that its focus is on a specific point in time, namely when the "examining immigration officer" is making a "determin[ation]" regarding the alien's admissibility." See 8 U.S.C. § 1225(b)(2)(A). Presumably, for aliens that have entered the country illegally and evaded detection for an extensive period of time, the specific point in time is when the alien is "seeking admission" during inspection by an immigration official. For those who have evaded detection within U.S. borders, that time is when they are detected. It is effectively as if the border has come to them. If the alien were not seeking admission at that time, he or she withdraw their application for admission and voluntarily "depart immediately from the United States" in lieu of continuing removal proceedings. See 8 U.S.C. § 1225(a)(4). An applicant who rejects that option and instead attempts to remain in the United States by participating in removal proceedings is plainly "seeking admission," and therefore, is subject to Section 1225(b)(2)(A). 8 U.S.C. § 1229a(c)(2)(A), (c)(4).

[¶ 15]  The Court is not persuaded by the argument that Section 1225(b)(2)(A) applies only to aliens arriving at ports of entry or who recently entered the United States. Section 1225(a)(1)

explicitly includes more than just arriving aliens in the definition of "applicant[s] for admission." See § 1225(a)(1) ("An alien present in the United States <u>who has not been admitted</u> **<u>or</u>** <u>who arrives in the United States</u> . . . shall be deemed for purposes of this chapter an applicant for admission.") (emphasis added). The structure of Section 1225 similarly illustrates that Congress knows how to limit the scope of the text geographically and temporally but elected not to do so with regards to Section 1225(a)(2)(A). <u>Mejia Olalde</u>, 2025 WL 3131942, at *3. For example, Section 1225(b)(1)(A)(i) applies to an alien "who is arriving in the United States," Section 1225(b)(1)(A)(iii) applies to an alien who cannot show he has been physically in the United States "continuously for the 2-year period immediately prior," but Section 1225(b)(2)(A) is not so limited. That provision has no similar language restricting its applicability only to aliens who are in the process of "arriving" at a port of entry or arrived within a certain timeframe. If Congress wished to impose similar geographic and temporal restrictions on the category of aliens that fall under Section 1225(b)(2)(A), it could have done so as it did with Section 1225(b)(1). <u>Id.</u> at 4.

[¶ 16]   Petitioner's interpretation results in more protections for those who evade the law for years, than for those who are inspected at the border. The text and structure of Section 1225(b)(2)(A) does not support this restrictive understanding of the statute, and the Court will not impose any restrictions where Congress has failed to do so.

[¶ 17]   Moreover, contrary to Petitioner's claims, interpreting Section 1225(b)(2)(A) to apply to him does not render superfluous the discretionary detention authority under Section 1226(a), the mandatory detention under Section 1226(c), or the recent amendments to Section 1226 by the Laken Riley Act. <u>See</u> 8 U.S.C. § 1226(c)(1)(E)(i)–(ii). As Respondents note, Section 1226(a) authorizes the executive to "arrest[] and detain[]" <u>any</u> alien pending removal proceedings. Section 1226(a) supplies detention authority for the significant group of aliens who are not "applicants for

admission" and hence not subject to Section 1225(b)(2)(A), such as aliens who were previously lawfully admitted to the United States but are now removable. For example, the detention of aliens who have overstayed their visas is governed by 1226(a). Id. Likewise, Section 1226(c)(1) requires the executive to detain aliens who have been admitted and are now "deportable." See 8 U.S.C. § 1226(c)(1)(B). Section 1225(b)(2), however, does not apply to admitted aliens. As for the Laken Riley Act provisions, as with other grounds of "inadmissibility" listed in Section 1226(c), both (a)(6)(C) and (a)(7) may apply to inadmissible aliens who were admitted in error or through fraud. See Mejia Olalde, 2025 WL 3131942, at *4 (noting the Laken Riley Act may apply in situations where Section 1225(b) might not).

[¶ 18]  Even if the Court assumes there is a degree of surplusage, the fear of some redundancy does not supersede the plain meaning of Section 1225(b)(2)(A). "As the Supreme Court has explained, when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control." Artola v. Garland, 996 F.3d 840, 844 (8th Cir. 2021). In this case, the plain meaning of Section 1225(b)(2)(A) controls, meaning Petitioner is subject to detention and is not entitled to a bond hearing.

## IV.    Petitioner's Due Process and APA Argument Fail

[¶ 19]  Petitioner also claims his detention violates his due process rights under the Fifth Amendment and the Administrative Procedure Act (APA). As noted, Section 1225(b)(2)(A) squarely governs his immediate detention. Therefore, he is not being detained absent due process because being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation. The Supreme Court addressed a similar situation in Demore v. Kim, 538 U.S. 510 (2003), and concluded that mandatory detention pending removal proceedings does

not violate due process. The <u>Demore</u> detainee argued that since deportation proceedings are indefinite, the indefinite detention violates the Due Process Clause. <u>Id.</u> However, the Court rejected that premise, holding that "detention under Section 1226(c) has a definitive end-point—the end of the removal proceedings—and thus a noncitizen is not subject to indefinite detention." <u>Id.</u> at 529. Thus, Petitioner's due process claim "must fail [and] [d]etention during removal proceedings is a constitutionally permissible part of the process." <u>Id.</u> at 531.

[¶ 20]   Likewise, Petitioner's APA violation claim fails because Section 1225(b)(2)(A) applies to Petitioner, meaning he was properly detained and is not bond eligible. Thus, there is no unlawful agency action for this court to review. <u>See</u> 5 U.S.C. § 706(2)(D) (a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law.").

<b><u>CONCLUSION</u></b>

[¶ 21]   Accordingly, for the reasons set forth above, the Petitioner's Habeas Petition is **DENIED**. This action is **DISMISSED without prejudice**.

[¶ 22]   **IT IS SO ORDERED**.

DATED February 2, 2026.

Daniel M. Traynor, District Judge
United States District Court